## BUENKER *v.* UNION FURNITURE COMPANY.

[No. 14,550. Filed June 2, 1932. Rehearing denied October 6, 1932.]

*Bohland & Wright* and *Kops & Noelker,* for appellant.
*White, Wright & Boleman* and *H. L. McCray,* for appellee.

BRIDWELL, J.—Appellant, the widow and sole dependent of her deceased husband, Frank F. Buenker, filed an application for adjustment of her claim for compensation against appellee, the employer of said decedent, with the Industrial Board of Indiana under the provisions of the Indiana Workmen's Compensation Act of 1929.

The application was heard by the full Industrial Board upon review, and an award entered denying compensation to appellant, from which award this appeal is taken; the appellant assigning as error that the award is contrary to law.

The finding made by the Board is as follows: "That one Frank F. Buenker was in the employ of the defendant on the 21st day of November, 1929, at an average weekly wage in excess of $30.00; and had been so employed as foreman of the finishing room of defendant for several years; that in the finishing of furniture various paints were used, including a mixture of commercial bronze and Japan drier, and had been so used for several years; that the decedent at times mixed his own paint, and had so done during his employment as fore-

man; that further, there is no showing that decedent had mixed or used any paints on the day in question, namely, November 21, 1929. Said Board further finds that sickness and death of the deceased Frank F. Buenker, which occurred on November 25, 1929, were the result of metal poison; that it was the result of occupational disease, and not an accident within the meaning of the Indiana Workmen's Compensation Act."

Appellant's contention is that the undisputed evidence in this cause is of such probative force as to require an award in her favor, and that there is no evidence upon which the Industrial Board could legitimately base the award made.

Facts proven by the evidence and not controverted are as follows: Appellee was engaged in the business of making furniture and the deceased had been employed by appellee in said business for a period of thirty years, and was so employed on the 21st day of November, 1929; for several years prior to this date he was a foreman, and had charge of the finishing room; in this room furniture was decorated with paints and gilts, and at times the deceased mixed and prepared the gilts; such gilt was not gold leaf, but was commercial bronze or gilt powder composed of approximately two-thirds copper and one-third zinc; the paint used in decorating furniture contained a zinc sulphate base, and was applied at times with a spraying machine as well as with a brush; the deceased employee at times helped in the work of decorating furniture, mixing his own paints and gilt and applying same, and would get paint and gilt on his clothing and hands; deceased was in the habit of eating apples while at work, which he would peel before eating; he was an habitual chewer of scrap tobacco; he kept his apples and chewing tobacco in or on his desk in the finishing room or carried same in his clothing; it was his habit to peel and eat his apples

and to take a chew of tobacco without cleansing his hands; on November 21, 1929, he became suddenly ill and was afflicted with an acute pain over the abdomen, had violent dysentery, passing watery stool, mucus and blood, and his condition gradually grew worse until he died on November 25, 1929; he was 59 years of age, in good health, and had never had any sickness during the entire time he worked for appellee prior to the illness from which he died; the attending physician gave painter's colic as the cause of death in the death certificate. On the day deceased was taken suddenly ill appellee was using the same kind of finishing material as had been previously used, and there was no difference in the working condition from what it had been theretofore.

The attending physician, in answer to a question as to the cause of death, answered: "Well, I would say acute painter's colic. It was dilatation of the heart that killed him, but not what produced it, it was acute painter's colic." He was then asked, "Was it metal poisoning?" and answered "Yes, that is my opinion." In answer to a hypothetical question as to the probable cause of the metal poisoning, he expressed the opinion that deceased "probably took an overdose, internally accidently," and stated, "it is possible he had it on his hands; in peeling the apples it adhered to his hands, and in chewing tobacco he got it in his mouth."

Another physician called by claimant testified you would have to consider some sort of poison as a possible cause of death, and that metal poison was a possible cause of death; that you would have to consider his occupation, and that, if deceased was really poisoned from metal, he would say that he had gotten it in some way by his employment; that it would have been possible for him to get it on the tobacco, and that there had probably been an internal taking of the poison.

We think the evidence sufficient to sustain the finding that the sickness and death of the deceased were the result of metal poison, and the remaining question is as to its sufficiency to sustain the further finding that it (the metal poisoning) was the result of occupational disease, and not an accident within the meaning of the Indiana Workmen's Compensation Act.

A careful examination of the record fails to disclose any evidence that anything unusual, unexpected, or extraordinary occurred on the day that deceased became sick, and it affirmatively appears that the finishing materials being used on that day were the same kind as previously used in decorating the furniture, and that the working conditions were in no way different from what they had previously been. There is an entire lack of evidence to show that on the day in question deceased mixed or applied any paints or gilt, or that he inadvertently, while peeling and eating apples or chewing tobacco, took internally any quantity of any material used in his work.

There is no evidence as to what quantity of any of the gilt or paints used would or could, if taken internally, cause the sickness resulting in his death.

It is the province of the Industrial Board to determine the facts, and from facts proven it may draw any reasonable inference. Upon a consideration of all the evidence we cannot say that the conclusion reached is unwarranted. The award is affirmed.